JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
DORIS A. KAELIN (162069)
JENNY L. FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: dkaelin@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>COMUNITY LENDING, INCORPORATED, A CALIFORNIA CORPORATION, ET AL.*<br><br>DEBTOR.<br><br>5671 SANTA TERESA BLVD, SUITE 201 SAN JOSE, CA 95123<br><br>EMPLOYER'S TAX ID NO.: 94-2673933 | CASE NO. 08-50030-MM-11<br><br>CHAPTER 11<br><br>JOINTLY ADMINISTERED CHAPTER 11 CASES |
| IN RE:<br><br>LES LIQUIDATION, INC., A CALIFORNIA CORPORATION, FKA LENDER E-SOURCE INC.<br><br>DEBTOR.<br><br>5671 SANTA TERESA BLVD, SUITE 201 SAN JOSE, CA 95123<br><br>EMPLOYER'S TAX ID NO.: 33-0966517 | CASE NO. 08-50031-MM-11 |

## DEBTORS' JOINT PLAN OF LIQUIDATION (DATED JULY 7, 2008)

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINITIONS ................................................................2
1.1 &ldquo;Administrative Claim&rdquo; .................................................2
1.2 &ldquo;Administrative Claims Bar Date&rdquo; ...................................3
1.3 &ldquo;Administrative Claim Objection Deadline&rdquo; ...................3
1.4 &ldquo;Allowed&rdquo; or &ldquo;Allowed Amount&rdquo; ...................................3
1.5 &ldquo;Allowed Administrative Claim&rdquo; .................................3
1.6 &ldquo;Allowed Claim&rdquo; ...............................................................3
1.7 &ldquo;Allowed Unsecured Claim&rdquo; .........................................3
1.8 &ldquo;Available Cash&rdquo; ...........................................................3
1.9 &ldquo;Avoidance Actions&rdquo; ...................................................4
1.10 &ldquo;Ballot&rdquo; ...........................................................................4
1.11 &ldquo;Bankruptcy Case(s)&rdquo; or &ldquo;Case(s)&rdquo; .........................4
1.12 &ldquo;Bankruptcy Code&rdquo; .......................................................4
1.13 &ldquo;Bankruptcy Court&rdquo; .....................................................4
1.14 &ldquo;Bankruptcy Estate(s)&rdquo; .................................................4
1.15 &ldquo;Bankruptcy Rules&rdquo; .....................................................4
1.16 &ldquo;Business Day&rdquo; ...............................................................4
1.17 &ldquo;Claim&rdquo; .............................................................................4
1.18 &ldquo;Claims Bar Date&rdquo; .........................................................4
1.19 &ldquo;Claims Objection Date&rdquo; ...............................................5
1.20 &ldquo;Confirmation&rdquo; .............................................................5
1.21 &ldquo;Confirmation Date&rdquo; .....................................................5
1.22 &ldquo;Confirmation Hearing&rdquo; .................................................5
1.23 &ldquo;Creditor&rdquo; .......................................................................5
1.24 &ldquo;Debtors&rdquo; .......................................................................5
1.25 &ldquo;Debtors&rsquo; Professionals&rdquo; .............................................5
1.26 &ldquo;DMG&rdquo; .............................................................................5
1.27 &ldquo;Disbursing Agent&rdquo; .......................................................5
1.28 &ldquo;Disputed Claim&rdquo; .........................................................6
1.29 &ldquo;Disputed Claims Reserve Account&rdquo; ...........................6
1.30 &ldquo;District Court&rdquo; .............................................................6
1.31 &ldquo;Distribution&rdquo; .................................................................6
1.32 &ldquo;Distribution Date&rdquo; .......................................................6
1.33 &ldquo;Effective Date&rdquo; .............................................................6
1.34 &ldquo;Final Order&rdquo; .................................................................6
1.35 &ldquo;Insider&rdquo; ...........................................................................6
1.36 &ldquo;Interest&rdquo; ...........................................................................6
1.37 &ldquo;Interest Holder&rdquo; .............................................................7
1.38 &ldquo;Late Filed Claim&rdquo; .........................................................7
1.39 &ldquo;Liquidating Debtor&rdquo; .....................................................7
1.40 &ldquo;Local Rules&rdquo; .................................................................7
1.41 &ldquo;Management Services Agreement&rdquo; ...............................7
1.42 &ldquo;Notice Parties&rdquo; .............................................................7
1.43 &ldquo;Notice Procedure&rdquo; .......................................................7
1.44 &ldquo;Order Limiting Notice&rdquo; .................................................7
1.45 &ldquo;Order of Confirmation&rdquo; .................................................7
1.46 &ldquo;Person&rdquo; .............................................................................7
1.47 &ldquo;Petition Date&rdquo; .................................................................7
1.48 &ldquo;Plan&rdquo; .................................................................................7
1.49 &ldquo;Plan Proponents&rdquo; ...........................................................7

| | | |
|---|---|---|
| 1 | 1.50 | "Priority Claim" ..........................................................................7 |
| | 1.51 | "Pro Rata" ...................................................................................7 |
| 2 | 1.52 | "Rejection Claim" .......................................................................8 |
| | 1.53 | "Rejection Claims Bar Date" ......................................................8 |
| 3 | 1.54 | "Responsible Person" .................................................................8 |
| | 1.55 | "Retained Claims" ......................................................................8 |
| 4 | 1.56 | "Secured Claim" .........................................................................8 |
| | 1.57 | "Schedules" ................................................................................8 |
| 5 | 1.58 | "Tax Claim" ................................................................................8 |
| | 1.59 | "Terwin Transaction" ..................................................................8 |
| 6 | 1.60 | "Terwin Parties" .........................................................................9 |
| | 1.61 | "Timely Filed Unsecured Claim of $10,000 or Less " ................9 |
| 7 | 1.62 | "Timely Filed Unsecured Claim Greater than $10,000" .............9 |
| | 1.63 | "Top Hat Claimants" ...................................................................9 |
| 8 | 1.64 | "Top Hat Litigation" ...................................................................9 |
| | 1.65 | "Top Hat Plan Funds" .................................................................9 |
| 9 | 1.66 | "Top Hat Plan" ............................................................................9 |

| | | |
|---|---|---|
| 10 | **ARTICLE II. DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS** ..................10 | |
| | 2.1 | Class 1 (Allowed Secured Claims of Landlords) ......................10 |
| 11 | 2.2 | Class 2 (Allowed Secured Claims (Other than Landlords) .......10 |
| | 2.3 | Class 3 (Section 507(a)(4) Priority Claims) ............................10 |
| 12 | 2.4 | Class 4 (Section 507(a)(5) Priority Claims) ............................10 |
| | 2.5 | Class 5 (Timely Filed Unsecured Claims of $10,000 or less) . 10 |
| 13 | 2.6 | Class 6 (Top Hat Claimants) ....................................................10 |
| | 2.7 | Class 7 (Timely Filed Unsecured Claims Greater than $10,000) ......10 |
| 14 | 2.8 | Class 8 (Insider Claims) ...........................................................11 |
| | 2.9 | Class 9 (Late Filed Claims) ......................................................11 |
| 15 | 2.10 | Class 10 (Interests) ...................................................................11 |

| | | |
|---|---|---|
| 16 | **ARTICLE III. TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE** | |
| 17 | **PLAN** .................................................................................................11 | |
| | 3.1 | Class 1 (Allowed Secured Claims of Landlords) ......................11 |
| | 3.2 | Class 2 (Allowed Secured Claims (other than Landlords)) ......11 |
| 18 | 3.3 | Class 3 (Section 507(a)(4) Priority Claims) ............................12 |
| | 3.4 | Class 4 (Section 507(a)(5) Priority Claims) ............................12 |
| 19 | 3.5 | Class 6 (Top Hat Claimants) ....................................................12 |

| | | |
|---|---|---|
| 20 | **ARTICLE IV. TREATMENT OF UNCLASSIFIED CLAIMS** ..............................13 | |
| | 4.1 | Allowed Administrative Claims .................................................13 |
| 21 | 4.2 | Tax Claims Entitled to Priority under Section 507(a)(8) ..........13 |

| | | |
|---|---|---|
| 22 | **ARTICLE V. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS THAT ARE** | |
| | **IMPAIRED UNDER THE PLAN** ...................................................................14 | |
| 23 | 5.1 | Class 5 (Timely Filed Unsecured Claims of $10,000 or Less) . 14 |
| | 5.2 | Class 7 (Timely Filed Unsecured Claims Greater than $10,000) . 14 |
| 24 | 5.3 | Class 8 (Insider Claims) ...........................................................14 |
| | 5.4 | Class 9 (Late Filed Claims) ......................................................14 |
| 25 | 5.5 | Class 10 (Interests) ...................................................................15 |

| | | |
|---|---|---|
| 26 | **ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN** ........................15 | |
| | 6.1 | Disposition of Remaining Assets ..............................................15 |
| 27 | 6.2 | Prosecution of Retained Claims ................................................15 |
| | 6.3 | Distributions ..............................................................................15 |
| 28 | | 6.3.1  Distribution Account .................................................15 |

Case 05-50030    Doc# 160    Filed: 07/07/08    Entered: 07/07/08 18:08:20    Page 3 of 42

|  |  | 6.3.2 | Timing of Distributions...................................................15 |
|  |  | 6.3.3 | Distribution Addresses..................................................15 |
|  |  | 6.3.4 | Withholding Taxes.......................................................15 |
|  | 6.4 | | Substantive Consolidation. .............................................16 |
|  | 6.5 | | Responsible Person. .......................................................16 |
|  | 6.6 | | Disbursing Agent. ..........................................................17 |
|  | 6.7 | | De Minimis Distributions. ..............................................17 |
|  | 6.8 | | Unclaimed Distributions. ...............................................17 |
|  | 6.9 | | Tax Returns, Payments and Refunds. .............................17 |
|  | 6.10 | | Termination of Employee Benefit Plans. .......................17 |
|  | 6.11 | | Cancellation of Legal Entity. .........................................18 |
|  | 6.12 | | Further Orders. ...............................................................18 |
|  | 6.13 | | Insurance Policies. .........................................................18 |
|  | 6.14 | | Post-Confirmation Employment of Personnel. ..............18 |
|  | 6.15 | | Post-Confirmation Compensation and Reimbursement of Professionals.....................18 |
|  | 6.16 | | Post-confirmation Notice. ..............................................19 |
|  | 6.17 | | Post-Confirmation Reports, Fees, and Final Decree. .....20 |
|  |  | 6.17.1 | U.S. Trustee Fees. .......................................................20 |
|  |  | 6.17.2 | Post-Confirmation Reports. .........................................20 |
|  |  | 6.17.3 | Final Decree. ...............................................................20 |

ARTICLE VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................20
|  | 7.1 | | Treatment of Executory Contracts and Unexpired Leases. ...........20 |
|  | 7.2 | | Assumption of Executory Contracts and Unexpired Leases. ..........20 |
|  | 7.3 | | Effect of Assumption of Executory Contracts and Unexpired Leases. .......21 |
|  | 7.4 | | Adding and Removing Executory Contracts and Unexpired Leases............21 |
|  | 7.5 | | Defaults. ..........................................................................21 |
|  | 7.6 | | Rejection of Executory Contracts and Unexpired Leases................21 |
|  | 7.7 | | Rejection Claims. ............................................................21 |

ARTICLE VIII. PROOFS OF CLAIM; OBJECTIONS ......................................................22
|  | 8.1 | | Time for Filing Proofs of Claim. ....................................22 |
|  | 8.2 | | Ownership and Transfers of Claims. ..............................22 |
|  | 8.3 | | Amendments to Claims....................................................22 |
|  | 8.4 | | Claim Objections. ...........................................................22 |
|  | 8.5 | | Reserve Accounts............................................................22 |
|  |  | 8.5.1 | Disputed Reserve Account...........................................22 |
|  |  | 8.5.2 | Reserve Account for Top Hat Funds. ..........................23 |
|  | 8.6 | | Distributions....................................................................23 |

ARTICLE IX. DEFAULT .........................................................................................23

ARTICLE X. PRESERVATION OF RETAINED CLAIMS.................................................24

ARTICLE XI. RETENTION OF JURISDICTION ............................................................24

ARTICLE XII. EFFECT OF ORDER OF CONFIRMATION ..............................................25
|  | 12.1 | | Binding Effect of Plan. ...................................................25 |
|  | 12.2 | | Revesting..........................................................................25 |
|  | 12.3 | | Full Satisfaction of Claims and Interests. .....................25 |
|  | 12.4 | | Termination of Stock Interests. ......................................26 |
|  | 12.5 | | Reservation of Powers. ...................................................26 |

ARTICLE XIII. MISCELLANEOUS ............................................................................26
|  | 13.1 | | Exemption from Stamp, Transfer and Other Taxes........26 |

Case 05-50030    Doc# 160    Filed: 07/07/08    Entered: 07/07/08 18:08:20    Page 4 of 42

| | | |
|---|---|---|
| 13.2 | Injunctions and Stays. | 26 |
| 13.3 | Certain Judgments Null and Void. | 26 |
| 13.4 | No Admissions. | 26 |
| 13.5 | Revocation of the Plan. | 27 |
| 13.6 | Successors and Assigns. | 27 |
| 13.7 | Nonconsenual Confirmation. | 27 |
| 13.8 | Destruction of Records. | 27 |
| 13.9 | Saturday Sunday and Legal Holiday. | 27 |
| 13.10 | Plan Interpretation. | 27 |
| 13.11 | Modification. | 28 |
| 13.12 | Setoff/Recoupment. | 28 |
| 13.13 | Waiver. | 28 |
| 13.14 | Notices. | 28 |
| 13.15 | Reservation of Rights. | 29 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

Page

11 U.S.C. Section 101(31) ...................................................................6
28 U.S.C. Section 1930(a)(6) ...........................................................3, 20
28 U.S.C. Section 2075 ......................................................................4

Title 11, U.S. Code Section 101 .........................................................4

Federal Rules of Bankruptcy Procedure Section 3022 ........................18

Bankruptcy Rule 1007(b) ...................................................................8
Bankruptcy Rule 3019 ...............................................................7, 25, 28
Bankruptcy Rule 9019 ......................................................................15

Bankruptcy Code Section 105 ..........................................................26
Bankruptcy Code Section 362 ..........................................................26
Bankruptcy Code Section 330 ............................................................3
Bankruptcy Code Section 331 ............................................................3
Bankruptcy Code Section 345 ............................................................6
Bankruptcy Code Section 346(h) ......................................................15
Bankruptcy Code Section 365 .......................................................2, 20
Bankruptcy Code Section 365(b)(2) .................................................21
Bankruptcy Code Section 502(e)(1) ..................................................14
Bankruptcy Code Section 503(a) ......................................................13
Bankruptcy Code Section 503(b) ........................................................2
Bankruptcy Code Section 506(a) ........................................................8
Bankruptcy Code Section 507(a) ........................................................7
Bankruptcy Code Section 507(a)(2)-(a)(7) ........................................14
Bankruptcy Code Section 507(a)(4) .............................................10, 12
Bankruptcy Code Section 507(a)(5) .............................................10, 12
Bankruptcy Code Section 507(a)(8) ..............................................8, 13
Bankruptcy Code Section 510(c) ......................................................14
Bankruptcy Code Section 521(a)(1) ...................................................8
Bankruptcy Code Section 541 ............................................................4
Bankruptcy Code Section 553 ............................................................8
Bankruptcy Code Section 1123(b)(3) ................................................17
Bankruptcy Code Section 1127 ...................................................7, 25, 27
Bankruptcy Code Section 1127(a) .................................................27, 28
Bankruptcy Code Section 1127(b) ....................................................28
Bankruptcy Code Section 1128(a) ......................................................5
Bankruptcy Code Section 1129(a)(8) .................................................27
Bankruptcy Code Section 1129(b) ......................................................2
Bankruptcy Code Section 1141 .........................................................25

# TABLE OF EXHIBITS

Exhibit A – List of Executory Contracts and Unexpired Leases to be Assumed Pursuant to Plan

Exhibit B – List of Executory Contracts and Unexpired Leases to be Rejected Pursuant to Plan

# PRELIMINARY STATEMENT

ComUnity Lending Incorporated ("CLI") and LES Liquidation, Inc., ("LES") (collectively, the "Debtors") propose this plan of liquidation (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. **The Plan provides for the substantive consolidation of the Bankruptcy Estates of CLI and LES upon the Effective Date. The "Effective Date" of the Plan is the first Business Day following the date on which the Order of Confirmation becomes a Final Order.**

On January 4, 2008, the Debtors filed their respective Voluntary Petitions under Chapter 11 of the Bankruptcy Code. Chapter 11 sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan of reorganization presented to creditors and shareholders for consideration and approval. Confirmation of the Plan is the culmination of that process.

This Plan is a liquidating Plan and sets forth the Debtors' proposal for the satisfaction, discharge and/or cancellation of all Claims and Interest in the Debtors. With the Plan, Creditors will receive the JOINT DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF LIQUIDATION (DATED JULY 7, 2008) (the "Disclosure Statement"). With the Plan and Disclosure Statement, Creditors will receive a Ballot for voting on the Plan. Classes 1, 2, 3, 4 and 6 Creditors are not impaired under the Plan and are therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to Classes 1, 2, 3, 4 and 6 are not being solicited and no Ballots need be returned by Classes 1, 2, 3, 4 and 6 Creditors. Class 9 Creditors and Class 10 Interests will receive nothing under the Plan and are deemed to have rejected the Plan. As a result, the vote of Class 9 Creditors and holders of Class 10 Interests is not being solicited and no Ballots need be returned by Class 9 Creditors or holders Class 10 Interests. Acceptances of the Plan are therefore being solicited from Classes 5, 7 and 8. Consequently, only Classes 5, 7 and 8 Creditors need to return their Ballots.

The Disclosure Statement includes a summary of the Debtors' history, a summary of significant events during the Chapter 11 case, a description of what Creditors will receive under the Plan and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and the Disclosure Statement before deciding whether you will accept or reject the Plan.

**CREDITORS WISHING TO VOTE ON THE PLAN SHOULD COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN _____ TO:**

**Murray & Murray**
**A Professional Corporation**
**Attn: Doris A. Kaelin**
**19400 Stevens Creek Boulevard**
**Cupertino, California 95014-2548**

**IF YOUR BALLOT IS NOT RETURNED BY _____, IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED. BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.**

If any class of Claims does not accept the Plan, the Debtor may elect to seek confirmation (i.e., Bankruptcy Court approval) of the Plan under Section 1129(b) of the Bankruptcy Code. Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the Plan by the holders of Claims and Interest Holders. If required, except as permitted by the terms of the Plan, the Plan may be modified at or prior to the hearing on confirmation to permit Bankruptcy Court approval under Section 1129(b). If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Cases dismissed, or converted to cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

**ARTICLE I.**

**DEFINITIONS**

As used in the Plan, the following terms shall have the respective meanings specified below:

1.1 **"Administrative Claim"** means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estates incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtors under Section 365 of the

Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

1.2 **"Administrative Claims Bar Date"** means that date which is thirty (30) days following the date of the notice of the Confirmation Date.

1.3 **"Administrative Claim Objection Deadline"** means sixty (60) days after the Administrative Claims Bar Date or such later date as may be established by the Bankruptcy Court for cause.

1.4 **"Allowed"** or **"Allowed Amount"** means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date.

1.5 **"Allowed Administrative Claim"** means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or to which there has been no objection within the time period established by the Plan or by an order of the Bankruptcy Court.

1.6 **"Allowed Claim"** means a Claim: (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtors' Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if: (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order; or (2) the Claim has already been satisfied.

1.7 **"Allowed Unsecured Claim"** means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

1.8 **"Available Cash"** means any and all cash and cash equivalents owned or held by the

Liquidating Debtor available for payment of Claims after payment of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for expenses incurred and anticipated to be incurred as provided for under the Plan.

1.9 **"Avoidance Actions"** means causes of action of the Debtors under Chapter 5 of the Bankruptcy Code.

1.10 **"Ballot"** means the voting ballot Creditors will receive for purposes of voting on the Plan.

1.11 **"Bankruptcy Case(s)"** or **"Case(s)"** means the bankruptcy case(s) commenced by the Debtors' filing with the Bankruptcy Court of their Voluntary Petitions under Chapter 11 of the Bankruptcy Code.

1.12 **"Bankruptcy Code"** means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

1.13 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of California, San Jose Division or such other court exercising jurisdiction over the Case.

1.14 **"Bankruptcy Estate(s)"** means the estate(s) created by the commencement of the Bankruptcy Case(s) and comprised of the property described in Section 541 of the Bankruptcy Code.

1.15 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Case.

1.16 **"Business Day"** means a day, Monday through Friday, excluding federal and legal holidays.

1.17 **"Claim"** means any: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.18 **"Claims Bar Date"** means: (a) with respect to Claims other than those held by governmental units, May 6, 2008; (b) with respect to Claims held by governmental units, July 2,

2008; and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

1.19 **"Claims Objection Date"** means the date ninety (90) days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the ex parte motion of the Liquidating Debtor.

1.20 **"Confirmation"** means the entry by the Bankruptcy Court of the Order of Confirmation.

1.21 **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Order of Confirmation.

1.22 **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

1.23 **"Creditor"** means any entity holding a Claim against the Debtors.

1.24 **"Debtors"** means, collectively, ComUnity Lending, Incorporated, a California corporation, and LES Liquidation, Inc. fka Lender E-Source, Inc., a California corporation.

1.25 **"Debtors' Professionals"** means, collectively, DMG, Murray & Murray, A Professional Corporation; Buchalter Nemer, A Professional Law Corporation; Rothstein Kass; and/or their successors, if any; and such other professionals whose employment by the Debtors prior to Confirmation is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Liquidating Debtor to represent or assist it in fulfilling its duties and obligations as the Liquidating Debtor under the Plan, including such accountant(s) as the Liquidating Debtor may select to complete the Debtors' tax returns and other required filings with governmental authorities having jurisdiction over the Liquidating Debtor and such legal professionals as might be appropriate to assist in administering the Plan, the Bankruptcy Case and the Bankruptcy Estates.

1.26 **"DMG"** means Diablo Management Group, Inc., a California corporation, a nationwide management consulting company based in the San Francisco Bay Area that provides services primarily to companies, investment firms, banks and creditors who are involved in mergers, acquisitions, turnarounds, workouts, re-organizations and sales (of equity and assets).

1.27 **"Disbursing Agent"** means DMG; provided that the Debtors, Liquidating Debtor or

1 DMG may request the Bankruptcy Court to designate another Person to serve as Disbursing Agent.

2      1.28 **"Disputed Claim"** means a Claim against the Debtors: (a) as to which a proof of

3 Claim has not been filed and that has been listed in the Debtors' Schedules as disputed, contingent or

4 unliquidated; or (b) as to which an objection or adversary proceeding has been filed within the time

5 fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn

6 or disposed of by a Final Order.

7      1.29 **"Disputed Claims Reserve Account"** means a segregated interest-bearing bank

8 account maintained for the purpose of holding cash attributable to Disputed Claims and administered

9 consistent with the provisions of Section 345 of the Bankruptcy Code.

10      1.30 **"District Court"** means the United States District Court for the Northern District of

11 California, San Jose Division.

12      1.31 **"Distribution"** means, as the context requires: (a) the cash to be provided under the

13 Plan to the holders of Allowed Claims; or (b) the payment, transfer, delivery or deposit of cash to

14 Creditors pursuant to the Plan.

15      1.32 **"Distribution Date"** means any date on which a Distribution is made pursuant to the

16 Plan.

17      1.33 **"Effective Date"** means the first Business Day following the date on which the Order

18 of Confirmation becomes a Final Order.

19      1.34 **"Final Order"** means an order entered on the docket by the Bankruptcy Court or the

20 District Court, as applicable, which is no longer subject to appeal, certiorari or other proceedings for

21 review or rehearing, and as to which no appeal, certiorari or other proceedings for review or

22 rehearing are pending.

23      1.35 **"Insider"** means all Persons (other than DMG any of its consultants) who constitute

24 an insider of either CLI or LES pursuant to 11 U.S.C. § 101(31) or applicable law.

25      1.36 **"Interest"** means (a) a share in the Debtors, whether or not transferable or

26 denominated stock, or similar security; or (b) a warrant or right (other than a right to convert) to

27 purchase, sell, or subscribe to a share, security, or interest of a kind specified in clause (a) of this

28 section.

1.37 **"Interest Holder"** means the holder of an Interest in the Debtors.

1.38 **"Late Filed Claim"** means an unsecured Claim that is filed in the Case or asserted against the Bankruptcy Estates and that is not a Timely Filed Unsecured Claim.

1.39 **"Liquidating Debtor"** means the Debtors on and after the Effective Date.

1.40 **"Local Rules"** means the Local Rules of the United States District Court for the Northern District of California, as amended, as applicable to this Bankruptcy Case.

1.41 **"Management Services Agreement"** means the agreement entered into between DMG and CLI on or about October 25, 2007, setting forth the terms and conditions of DMG's pre and post petition management services.

1.42 **"Notice Parties"** means the Liquidating Debtor and the parties identified on the ORDER LIMITING NOTICE.

1.43 **"Notice Procedure"** means the procedure described in Section 6.16.

1.44 **"Order Limiting Notice"** means the order entered by the Bankruptcy Court in these Cases on January 22, 2008.

1.45 **"Order of Confirmation"** means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.46 **"Person"** shall have the meaning ascribed to it in the Bankruptcy Code.

1.47 **"Petition Date"** means January 4, 2008, the date on which the Debtors filed their Voluntary Petitions under Chapter 11 initiating the Bankruptcy Cases and on which date relief was ordered in the Bankruptcy Cases.

1.48 **"Plan"** means this JOINT PLAN OF LIQUIDATION (DATED JULY 7, 2008), including any modification(s) hereof and/or amendment(s) hereto that comply with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

1.49 **"Plan Proponents"** means the Debtors.

1.50 **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

1.51 **"Pro Rata"** means, with respect to any Distributions to be made to the holder of an

Allowed Claim, the proportion that such Allowed Claim bears to the aggregate of all outstanding Allowed Claims in the same Class.

1.52   **"Rejection Claim"** means an Allowed Unsecured Claim arising from the Debtors' rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

1.53   **"Rejection Claims Bar Date"** means the earlier of: (a) thirty (30) days following the date of the notice of the  Confirmation Date; or (b) thirty (30) days after the rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

1.54   **"Responsible Person"** means DMG or such Person otherwise designated by an order of the Bankruptcy Court.

1.55   **"Retained Claims"** means any Claim owned or held by the Debtors against any Person as of the Effective Date, including Avoidance Actions and those Retained Claims referred to in Article X.

1.56   **"Secured Claim"** means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtors have an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

1.57   **"Schedules"** means the Debtors' schedules of assets and liabilities consisting of Schedules "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at anytime prior to Distribution.

1.58   **"Tax Claim"** means any Allowed Claim against the Debtors entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.59   **"Terwin Transaction"** means that certain transaction or series of transactions resulting in the creation of the Terwin Mirco Asset-Backed Security, Series 2007 ComUnity1.

1.60 **"Terwin Parties"** means all parties to or having a connection with the Terwin Transaction, including their attorneys and professionals.

1.61 **"Timely Filed Unsecured Claim of $10,000 or Less "** means an unsecured Claim of $10,000.00 or less which is: (a) listed in the Debtors' Schedules (other than if listed as disputed, contingent or unliquidated); (b) filed by the Claims Bar Date or other applicable bar date established in the Case for filing a Claim; or (c) otherwise determined to be timely by order of the Bankruptcy Court.

1.62 **"Timely Filed Unsecured Claim Greater than $10,000"** means an unsecured Claim of $10,000.01 or greater which is: (a) listed in the Debtors' Schedules (other than if listed as disputed, contingent or unliquidated); (b) filed by the Claims Bar Date or other applicable bar date established in the Case for filing a Claim; or (c) otherwise determined to be timely by order of the Bankruptcy Court.

1.63 **"Top Hat Claimants"** means former CLI employees who are parties to the Top Hat Litigation.

1.64 **"Top Hat Litigation"** means the original District Court action brought by the Top Hat Claimants for turnover of the Top Hat Funds, the ensuing Adversary Proceeding following the filing of the Bankruptcy Case and the District Court action assigned case number 08-00201 following the District Court's Order withdrawing the reference, including the Counterclaim brought by CLI and currently pending before the District Court.

1.65 **"Top Hat Plan Funds"** means the monies previously contributed by former CLI employees as deferred compensation in the Top Hat Plan, including all investments purchased with such amounts.

1.66 **"Top Hat Plan"** means CLI's Non-Qualified, Unfunded, Deferred Compensation Plan.

A term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

/ / /

# ARTICLE II.

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Interests in the Debtors are designated and classified below for purposes of the Plan. **Upon the Effective Date, the Bankruptcy Estates of CLI and LES shall be deemed substantively consolidated for purposes of administration, liquidation of assets, and Distribution to Creditors under the Plan. Accordingly, the Allowed Claims of both CLI and LES are consolidated in the below classes.**

Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one Class is classified in a particular Class only to the extent that it qualifies within the description of that Class, and is placed in a different Class to the extent it qualifies within the description of such different Class.

2.1 **Class 1 (Allowed Secured Claims of Landlords).** Class 1 consists of any Allowed Secured Claim (each of which will be its own subclass under Class 1) of the Debtors' previous landlords that are currently holding security deposits.

2.2 **Class 2 (Allowed Secured Claims (Other than Landlords).** Class 2 consists of any Allowed Secured Claim (each of which will be its own subclass under Class 2) other than the Secured Claims in Class 1.

2.3 **Class 3 (Section 507(a)(4) Priority Claims).** Class 3 consists of Priority Claims entitled to priority under Bankruptcy Code Section 507(a)(4).

2.4 **Class 4 (Section 507(a)(5) Priority Claims).** Class 4 consists of Priority Claims entitled to priority under Bankruptcy Code Section 507(a)(5).

2.5 **Class 5 (Timely Filed Unsecured Claims of $10,000 or less).** The holders of Class 5 Claims include Creditors not provided for or included in any other class and that hold Allowed Unsecured Claims of $10,000 or less, and those Creditors with Allowed Claims greater than $10,000 who elect treatment under Class 5 and agree to reduce their Allowed Claim to $10,000.

2.6 **Class 6 (Top Hat Claimants).** Class 6 consists of all Claims against CLI by the Top Hat Claimants with respect to the Top Hat Plan.

2.7 **Class 7 (Timely Filed Unsecured Claims Greater than $10,000).** Class 7 consists

of all Allowed Timely Filed Unsecured Claims not included or provided for in any other class, including, without limitation, all Rejection Claims and all unsecured Claims of vendors and trade creditors for goods delivered or services provided to the Debtors prior to the Petition Date, but excluding Administrative Claims, Priority Claims, and Tax Claims.

2.8 **Class 8 (Insider Claims)**. Class 8 consists of Allowed Unsecured Claims by Insiders but excluding the Top Hat Claimants.

2.9 **Class 9 (Late Filed Claims)**. Class 9 consists of all Allowed Late Filed Claims.

2.10 **Class 10 (Interests)**. Class 10 consists of all Interests.

## ARTICLE III.

## TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

The below classes of Claims and Interests are not impaired under the Plan and shall receive the treatment under the Plan as described[1]:

3.1 **Class 1 (Allowed Secured Claims of Landlords)**. Except to the extent a Class 1 Creditor agrees to a less favorable treatment, the Plan leaves Class 1 Creditors' legal, equitable, and contractual rights unaltered, including the retention of any lien to the extent not avoidable. Any Allowed Claim held by Class 1 Creditors remaining after giving effect to the foregoing treatment shall be treated as part of Class 5 or Class 7, as applicable. Upon the full payment of Allowed Class 1 Claims, any and all liens or security interests of any nature whatsoever held by Class 1 Creditors shall be deemed discharged. The foregoing is in full and final satisfaction of all Class 1 Claims.

3.2 **Class 2 (Allowed Secured Claims (other than Landlords))**. To the extent that any Class 2 Allowed Secured Claims exist, the Plan leaves Class 2 Creditors' legal, equitable, and contractual rights unaltered, including their retention of any lien to the extent not avoidable. Any Allowed Claim held by the holder of such Allowed Secured Claim remaining after giving effect to the foregoing treatment shall be treated as part of Class 5 or Class 7, as applicable. Upon the full payment of any Allowed Class 2 Claims, any and all liens or security interests of any nature whatsoever held by Class 2 Creditors shall be deemed discharged. The foregoing is in full and final

---

[1] The following treatment of Creditors is subject to the Debtors' or Liquidating Debtor's right to setoff or recoupment of any Claim.

satisfaction of all Class 2 Claims.

3.3   **Class 3 (Section 507(a)(4) Priority Claims)**.  Except to the extent that the holder of a particular Allowed Class 3 Claim has agreed to a less favorable treatment of such Claim, each holder of an Allowed Class 3 Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim.  The foregoing is in full and final satisfaction of all Class 3 Claims.

3.4   **Class 4 (Section 507(a)(5) Priority Claims)**.  Except to the extent that the holder of a particular Allowed Class 4 Claim has agreed to a less favorable treatment of such Claim, each holder of an Allowed Class 4 Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim.  The foregoing is in full and final satisfaction of all Class 4 Claims.

3.5   **Class 6 (Top Hat Claimants)**.  The Plan leaves the Class 6 Top Hat Claimants' legal, equitable and contractual rights unaltered.  The treatment of the Top Hat Claimants shall be dependent upon the outcome of the Top Hat Litigation to be determined upon entry of a Final Order in the District Court.  If CLI prevails in the Top Hat Litigation pursuant to a Final Order, except as may be otherwise provided by a Final Order, the holders of Allowed Class 6 Claims shall hold and be afforded the same treatment as (a) Class 4 Claims, to the extent the Claims are Allowed in part as Priority Claims, and/or (b) Class 7 Claims to share pro rata with other Class 7 Claims.  If the Top Hat Claimants prevail in the Top Hat Litigation pursuant to a Final Order, except as may be otherwise provided by a Final Order, the holders of Class 6 Claims shall be paid the Top Hat Funds, to the extent of their respective contribution, subject to the Liquidating Debtor withholding and paying applicable federal and state withholding income tax amounts to the appropriate taxing authorities (as required), as agreed by the Top Hat Claimants and the Liquidating Debtor, or if they cannot agree, pursuant to a Final Order by the District Court.  Payment in accordance with the treatment described in the preceding sentence shall occur upon the latest of: (a) within 15 days after entry of the Final Order; (b) upon determination of the amount of contribution by each Top Hat Claimant by a Final Order, if the Top Hat Claimants and the Liquidating Debtor cannot agree; or (c) such other time as may be agreed to by the Top Hat Claimants.  If the Debtors prevail in the Top Hat

Litigation, the interest earned on the Top Hat Funds shall become Available Cash. If the Top Hat Claimants prevail in the Top Hat Litigation and if the Debtors and the Top Hat Claimants cannot otherwise agree, such interest shall remain in the existing restricted bank account of the Debtors pending a Final Order. Upon entry of a Final Order on such issue, the interest shall become Available Cash or payable to the Top Hat Claimants as determined by such Final Order. The foregoing is in full and final satisfaction of all Class 6 Claims.

## ARTICLE IV.

### TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

4.1 **Allowed Administrative Claims**. Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim; and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtors' business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtors' Professionals, must be filed on or before the Administrative Claims Bar Date. If the holder of an asserted Administrative Claim does not file and serve a request for payment of such Claim on the Notice Parties on or before that date, the holder shall be forever barred from asserting such Claim or receiving any payment on account of such Claim. Any objection to the allowance of an Administrative Claim (excluding any claim by the Debtors' Professionals) shall be filed no later than the Administrative Claim Objection Deadline. If no objection to the applicable Administrative Claim is filed on or before that date, such Administrative Claim shall be deemed Allowed as of that date.

4.2 **Tax Claims Entitled to Priority under Section 507(a)(8)**. Except to the extent that the holder of a particular Tax Claim has agreed to a different treatment of such Claim, each holder of an Allowed Tax Claim shall receive on the Effective Date a cash payment of the Allowed Amount of such Claim; provided, however, that no such payment shall be made unless all Allowed Claims

1 entitled to priority pursuant to Section 507(a)(2) through (a)(7) of the Bankruptcy Code are being

2 paid concurrently with such payment or are otherwise receiving the treatment accorded by the Plan.

3 **ARTICLE V.**

4 **TREATMENT OF CLASSES OF**
**CLAIMS AND INTERESTS THAT ARE IMPAIRED UNDER THE PLAN**

5

6 5.1 **Class 5 (Timely Filed Unsecured Claims of $10,000 or Less)**. Holders of Class 5

7 Allowed Claims shall receive a single cash payment in the amount of 20% of their Allowed

8 Unsecured Claim on the latest of: (a) 30 days after the Effective Date of the Plan; or (b) 20 days after

9 the entry of an Order allowing the Claim if there is a filed objection to the Claim. The foregoing is

10 in full and final satisfaction of all Class 5 Claims.

11 5.2 **Class 7 (Timely Filed Unsecured Claims Greater than $10,000)**. Subject to

12 payment of the Classes 1-5 Allowed Claims as provided by the Plan, each holder of an Allowed

13 Class 7 Claim shall receive its Pro Rata share of Available Cash pursuant to one or more

14 Distributions. The foregoing is in full and final satisfaction of all Class 7 Claims.

15 5.3 **Class 8 (Insider Claims)**. The holders of Class 8 Claims shall receive the following

16 treatment except as may otherwise be ordered by the Bankruptcy Court: (a) to the extent that Claims

17 in Class 8 are subordinated under Section 510(c) of the Bankruptcy Code as determined by the

18 Bankruptcy Court, such Claims shall be subordinate to all classes other than Class 10 and shall

19 receive nothing under the Plan; (b) to the extent any Class 8 Claims are disallowed upon objection

20 by the Debtors pursuant to 502(e)(1) or otherwise as determined by the Bankruptcy Court, such

21 Claims shall receive nothing under the Plan; and (c) any Class 8 Claims allowed and not

22 subordinated shall hold and receive the treatment of a Class 3 or Class 4 Claim, to the extent entitled

23 to priority under the Bankruptcy Code, or otherwise shall share Pro Rata in Class 5 or Class 7 as

24 applicable. The foregoing is in full and final satisfaction of all Class 8 Claims.

25 5.4 **Class 9 (Late Filed Claims)**. Each holder of an Allowed Class 9 Late Filed Claim

26 shall receive its Pro Rata share of all Available Cash remaining after payment in full of Allowed

27 Claims in Classes 1 through 7 and Class 8 Allowed Claims not subject to equitable subordination.

28 The foregoing is in full and final satisfaction of all Class 9 Claims.

5.5　**Class 10 (Interests)**.  Holders of Class 10 Interests shall receive nothing under this Plan on account of such interests and their respective Interests shall be canceled and extinguished on the Effective Date.  The foregoing is in full and final satisfaction of all Class 10 Interests.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1　**Disposition of Remaining Assets**.  Subject to Bankruptcy Court approval where required, the Liquidating Debtor will liquidate all of its assets remaining as of the Effective Date unless the Responsible Person determines that any such asset is of inconsequential value or that the cost of liquidating such asset would exceed the expected amount of proceeds.

6.2　**Prosecution of Retained Claims**.  Except as otherwise provided in the Plan, the Responsible Person will collect and prosecute the Retained Claims.  The Responsible Person shall not compromise any Retained Claim without first obtaining an order of the Bankruptcy Court, after notice to all Notice Parties and a reasonable opportunity for a hearing, to the extent required under Bankruptcy Rule 9019.

6.3　**Distributions**.

6.3.1　<u>Distribution Account</u>.  If the Disbursing Agent is a Person other than the Responsible Person, the Disbursing Agent shall hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

6.3.2　<u>Timing of Distributions</u>.  Except as otherwise provided for in the Plan, the Disbursing Agent shall make a first Distribution to holders of Allowed Claims as soon as practicable after the Effective Date.  Thereafter, the Disbursing Agent shall make subsequent Distributions in its discretion.

6.3.3　<u>Distribution Addresses</u>.  Unless a Creditor has provided the Liquidating Debtor with written notice of a different address, Distributions shall be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court.  If no proof of Claim is filed with respect to a particular Claim, the Distribution shall be mailed to the address set forth in the Schedules filed by the Debtors.

6.3.4　<u>Withholding Taxes</u>.  Pursuant to Section 346(h) of the Bankruptcy Code, the

1 Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any
2 cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent shall be
3 permitted to withhold a Distribution to any Creditor that has not provided information requested by
4 the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent
5 shall comply with all reporting obligations imposed on it by any governmental unit with respect to
6 withholding and related taxes.

7        6.4   **Substantive Consolidation**. Upon the Effective Date, the Bankruptcy Estates of CLI
8 and LES shall be deemed substantively consolidated for purposes of administration, liquidation of
9 assets, as well as Distribution to Creditors under the Plan. Pursuant to this Section 6.4, all inter-
10 company debts between CLI and LES shall be extinguished on the Effective Date.

11        6.5   **Responsible Person**. DMG shall be the Responsible Person under the Plan. The
12 terms of employment of DMG are and shall be as set forth in the DMG Management Services
13 Agreement subject to approval of its compensation pursuant to Section 6.15 below. Unless ordered
14 by the Bankruptcy Court, the Responsible Person shall serve without a guaranty or fiduciary bond.

15        The Responsible Person may be replaced in the event of either a voluntary resignation or at
16 the request of a party in interest for "cause" upon Order of the Bankruptcy Court. In the event of a
17 voluntary resignation, the then Responsible Person shall select a replacement. In the event the
18 Responsible Person is removed for cause, the Court shall appoint a replacement.

19        The Responsible Person shall manage the Liquidating Debtor and shall have all of the
20 authority to act on behalf of the Liquidating Debtor as if the Responsible Person was the sole
21 shareholder, director and officer in accordance with the Bankruptcy Code, the Bankruptcy Rules and
22 Local Rules. Such management shall include: (a) fulfilling the duties and obligations of the
23 Liquidating Debtor under the Plan, and (b) fully administering the Bankruptcy Estates as required by
24 the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules, which duties
25 and obligations include, without limitation, the facilitation of Distributions pursuant to the Plan,
26 reviewing Claims, objecting to Disputed Claims, supervising the preparation and filing of required
27 tax returns of the Debtors, dissolving the Debtors' corporate existence and closing the Bankruptcy
28 Case. Without limiting the foregoing, the Responsible Person, acting on behalf of the Liquidating

DAK/JLF
K:\Com\Fin\Q\Leasing\Pld\PlanDisclv12.doc    Filed: 07/07/08    16    Entered: 07/07/08 18:08:20    DEBTORS' JOINT PLAN OF LIQUIDATION
Case:     Doc#      Page 23 of
42

Debtor, shall have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code to prosecute or otherwise assert the Retained Claims, including any Avoidance Actions. The Responsible Person may resign at any time, or may be removed for cause upon motion by any party in interest to the Bankruptcy Court; provided that any such resignation or removal shall not be effective until a new Responsible Person has been appointed by the Bankruptcy Court.

The Responsible Person may, in its discretion, employ such other persons as may be necessary to assist in this Case.

**6.6** **Disbursing Agent**. DMG shall serve as Disbursing Agent unless otherwise ordered by the Bankruptcy Court.

**6.7** **De Minimis Distributions**. Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled to is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

**6.8** **Unclaimed Distributions**. Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Liquidating Debtor and be considered Available Cash.

**6.9** **Tax Returns, Payments and Refunds**. The Liquidating Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtors and the Liquidating Debtor on a timely basis (other than Tax Claims provided for under the Plan). The Debtors reserve all rights to amend prior tax returns of the Debtors and to pursue and collect all potential tax refunds, to claim losses and to take such other actions to the fullest extent allowed by law to recover value for Creditors.

**6.10** **Termination of Employee Benefit Plans**. The Liquidating Debtor shall continue to

fulfill all responsibilities relative to the termination of its employee benefit plans and the distributions therefrom, and shall pay the costs related thereto.

6.11 **Cancellation of Legal Entity**. Pursuant to the provisions of California Corporations Code, the Liquidating Debtor shall be dissolved and Debtors' respective corporate existences terminated, without further corporate action, upon the entry of a final decree in the Bankruptcy Case pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure. The Order of Confirmation shall be deemed the appropriate authorization required under the California Corporations Code, authorizing the Responsible Person to file the requisite certificate of dissolution and certificate of cancellation with the California Secretary of State together with any other filings that may be necessary to cancel and dissolve the Liquidating Debtor.

6.12 **Further Orders**. Upon motion by Debtors, on not less than twenty (20) days' notice to the Notice Parties, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

6.13 **Insurance Policies**. To the extent any insurance policies exist in which either the Debtors and/or their personnel/consultants have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtors and/or the Debtors' current or former management or other personnel that may be covered by such policies.

6.14 **Post-Confirmation Employment of Personnel**. The Responsible Person and any Disbursing Agent shall be entitled to receive reasonable compensation pursuant to the terms of the Management Services Agreement pursuant to the procedure set forth in Section 6.15.

The Liquidating Debtor and any Disbursing Agent may employ or contract with persons and other entities to perform, or advise and assist in the performance of, their respective obligations under the Plan. The Liquidating Debtor may continue to employ the Debtors' Professionals for the purposes for which they were employed before the Confirmation Date, and for such additional purposes as the Responsible Person may request, and the Liquidating Debtor may employ other professionals as necessary to perform their responsibilities under the Plan.

6.15 **Post-Confirmation Compensation and Reimbursement of Professionals**. All

professionals employed by the Liquidating Debtor after the Confirmation Date shall be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the following:

6.15.1 Each party requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties.

6.15.2 Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses shall be in writing (and sufficiently detailed to allow the party whose compensation is subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the party whose compensation is subject to the objection. Such an objection must be served within twenty (20) days after service of the detailed statement.

6.15.3 If there is no objection to a party's requested fees and expenses within such twenty (20) day period, the Liquidating Debtor shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Liquidating Debtor shall promptly pay the undisputed portion of such fees and expenses.

6.15.4 To the extent that an objection is timely served, the Responsible Person shall reserve monies in the amount of the disputed fees and expenses pending resolution of said objection.

6.15.5 Any objection to a request shall be resolved by either (a) written agreement between the party requesting such fees and expenses and the objecting party, or (b) resolution of the disputed amount by the Bankruptcy Court pursuant to a Final Order. Resolution by the Bankruptcy Court shall be requested by motion filed and served on the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty (20) days notice and such motion may be filed by either the requesting party or the objecting party. Any opposition to the motion shall be filed and served no later than five (5) days prior to the hearing.

6.15.6 All payments made pursuant to the foregoing procedure shall be interim only and subject to final Bankruptcy Court approval on a duly noticed fee application.

6.16 **Post-confirmation Notice**. To the extent any action taken in the Bankruptcy Case

after the Effective Date requires notice under the Bankruptcy Code or the Bankruptcy Rules, the Order Limiting Notice shall continue in effect and notice shall be provided in accordance therewith, provided that notice shall not be required to any Person whose Claims have been paid in full. The Liquidating Debtor and the Responsible Person may proceed via the "scream or die" notice procedures as permitted by the Local Rules.

6.17 **Post-Confirmation Reports, Fees, and Final Decree**.

6.17.1 <u>U.S. Trustee Fees</u>. Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Liquidating Debtor shall pay to the United States Trustee the quarterly fee for such quarter until this case is converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

6.17.2 <u>Post-Confirmation Reports</u>. Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Liquidating Debtor shall file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee. Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

6.17.3 <u>Final Decree</u>. After the Bankruptcy Estate is fully administered, the Liquidating Debtor shall file an application for a Final Decree, and shall serve the application on the Notice Parties providing at least twenty (20) days' notice of the request for entry of the Final Decree.

## ARTICLE VII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 **Treatment of Executory Contracts and Unexpired Leases**. The Debtors reserve the right to move the Bankruptcy Court at any time for authority to assume, assume and assign, or reject, pursuant to Bankruptcy Code Section 365, any and all contracts that are executory and leases that are unexpired.

7.2 **Assumption of Executory Contracts and Unexpired Leases**. Each contract listed on **Exhibit "A"** to the Plan shall be assumed by the Debtors on the Effective Date to the extent each such contract is an executory contract.

7.3 **Effect of Assumption of Executory Contracts and Unexpired Leases**. All executory contracts assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

7.4 **Adding and Removing Executory Contracts and Unexpired Leases**. The provisions of this Article VII may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

7.5 **Defaults**. Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtors shall, on or before the Effective Date: (a) cure, or provide adequate assurance that they will promptly cure, any such default; (b) compensate, or provide adequate assurance that they will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

7.6 **Rejection of Executory Contracts and Unexpired Leases**. Without admitting the validity of any other executory contracts and unexpired leases, all executory contracts and unexpired leases of the Debtors that are listed on **Exhibit "B"** hereto are hereby rejected by the Debtors as of the Effective Date. Confirmation of the Plan shall be deemed to constitute Bankruptcy Court approval of such rejection.

7.7 **Rejection Claims**. The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Liquidating Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

/ / /

/ / /

# ARTICLE VIII.

## PROOFS OF CLAIM; OBJECTIONS

**8.1** **Time for Filing Proofs of Claim**. The time to file a proof of Claim, when required, has expired.

**8.2** **Ownership and Transfers of Claims.** Distributions to Creditors under the Plan shall be made to the Persons shown on the Debtors' or the Bankruptcy Court's records on the first Distribution Date. For purposes of any Distribution under the Plan, the Liquidating Debtor, the Disbursing Agent, the Responsible Person, and their professionals shall have no obligation to recognize any transfer of Claims after the first Distribution Date.

> ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE LIQUIDATING DEBTOR AFTER THE FIRST DISTRIBUTION DATE MUST ARRANGE WITH THE HOLDER ON THAT DATE TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED. NEITHER THE LIQUIDATING DEBTOR NOR THE DISBURSING AGENT WILL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF CLAIMS AFTER THE FIRST DISTRIBUTION DATE.

**8.3** **Amendments to Claims**. Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim: (a) may not be filed upon expiration of the applicable bar date; and (b) may not be amended later than thirty (30) days following the date of the notice of the Confirmation Date except for amendments to proofs of Claim to decrease the amount or priority thereof; provided that the foregoing deadline shall not accord a claimant a right to amend a Claim that, pursuant to applicable law, is not subject to amendment. Unless otherwise provided herein, any new or amended Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Liquidating Debtor or Responsible Person.

**8.4** **Claim Objections**. An objection to a Claim shall be filed no later than the Claims Objection Date. The Liquidating Debtor shall have the primary responsibility to review Claims filed against the Debtors, to file objections as appropriate and to resolve Disputed Claims.

**8.5** **Reserve Accounts**.

**8.5.1** Disputed Reserve Account. Subject to the next sentence, any cash that would

be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder shall be set aside by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall Distribute the cash deposited into the Disputed Claims Reserve Account on account of such Disputed Claim. To the extent that cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim exceed the cash distributable with respect to the Allowed Amount of such Claim, such excess cash shall be considered Available Cash.

8.5.2    Reserve Account for Top Hat Funds.  Unless otherwise ordered by the Bankruptcy Court, the Top Hat Funds shall remain in a segregrated, restricted bank account pending a Final Order in the Top Hat Litigation.

8.6    **Distributions**.  Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the preceding section.

**ARTICLE IX.**

**DEFAULT**

9.1    If the Liquidating Debtor shall default in the performance of any of its obligations under the Plan, and shall not have cured such default within a period of twenty (20) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Liquidating Debtor to perform such obligations. If the Liquidating Debtor defaults in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. If such motion is granted, the Plan shall terminate, and all property of the Liquidating Debtor shall revest in the Chapter 7

estate. Such property shall be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code. Any party in interest, including the Liquidating Debtor, may oppose any such motion.

## ARTICLE X.

### PRESERVATION OF RETAINED CLAIMS

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides. The failure of the Plan to refer to any particular Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Retained Claim. All Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date.

Without limiting the generality of the foregoing, the Retained Claims include, but are not limited to, the following: [review is ongoing; potential claims will be specified in amended proposed Plan].

The Debtors have been investigating or intend to investigate potential Retained Claims. In the event that any Claims are asserted against the Debtors for which Insiders may be partially or fully responsible, the Debtors and Liquidating Debtor reserve all rights to seek recovery against such persons. The entry of the Order of Confirmation shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Liquidating Debtor upon any Retained Claims.

## ARTICLE XI.

### RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of the Bankruptcy Case" (a) to enforce the provisions, purposes, and intent of the Plan; (b) to determine the allowance or disallowance of Claims; (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Liquidating Debtor against any party, including the recovery of property and subordination of Claims; (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan; (e) to adjudicate controversies arising from the terms of the

Plan; (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Case; (h) to facilitate the consummation of the Plan; (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation; (j) to hear and determine any Claim of any Persons of any nature whatsoever against the Debtors' professionals arising in or related to the Case; (k) to hear any other matter pertaining to the Plan; and (l) to enter a Final Decree closing the Bankruptcy Case. If closed, the Bankruptcy Case may be reopened at any time to facilitate the provisions of this Article XI of the Plan.

## ARTICLE XII.

### EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

12.1 **Binding Effect of Plan**. The provisions of the confirmed Plan shall bind the Debtors, the Liquidating Debtor, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

12.2 **Revesting**. On the Effective Date, all property of the Debtors and the Bankruptcy Estates shall vest in the Liquidating Debtor, free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders except as otherwise provided in the Plan. Revesting does not modify the nature of any contracts assumed by the Debtors.

12.3 **Full Satisfaction of Claims and Interests**. Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims and Interests, including any interest accrued thereon from and after the Petition Date, against the Debtors, the Liquidating Debtor, the Bankruptcy Estates, or any assets or property of the Debtors, the Liquidating Debtor and the Bankruptcy Estates.

12.4 **Termination of Stock Interests**. Any and all rights of Interest holders in the Debtors that existed prior to the Effective Date shall be cancelled and extinguished.

12.5 **Reservation of Powers**. Nothing in the Plan shall be deemed to have constituted a waiver of the any powers held by the Debtors as debtors in possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules. The Liquidating Debtor shall retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor in possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

# ARTICLE XIII.

## MISCELLANEOUS

13.1 **Exemption from Stamp, Transfer and Other Taxes**. To the extent any sale contemplated by the Plan would be subject to a stamp or similar tax, the Debtors shall be entitled to exclusion of such sale from any stamp or similar tax to the fullest extent allowed by law.

13.2 **Injunctions and Stays**. Unless otherwise provided, all injunctions or stays arising under or entered during the Cases under Section 105 or Section 362 of the Bankruptcy Code, or otherwise, an in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

13.3 **Certain Judgments Null and Void**. Any judgment obtained against the Debtors after the Petition Date in any court other than in the Bankruptcy Court, and any judgment obtained prior to the Petition Date that was still subject to appeal on the Petition Date, shall be null and void as a determination of the liability of the Debtors with respect to any debt.

13.4 **No Admissions**. Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtors or their Bankruptcy Estates with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Bankruptcy Estates.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan shall be null and void, and nothing contained in the Plan shall: (a) be deemed to be an admission by the Debtors with respect to any matter discussed in the

Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interest, or any claims held by the Debtors; or (c) prejudice in any manner the rights of the Debtors or the Bankruptcy Estates in any further proceedings.

13.5 **Revocation of the Plan**. The Debtors reserve the right to withdraw the Plan before the Confirmation Date.

13.6 **Successors and Assigns**. The rights, benefits, and obligations of any entity referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

13.7 **Nonconsenual Confirmation**. In the event that the Classes not entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Debtors reserve the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a). In accordance with Section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

13.8 **Destruction of Records**. The Liquidating Debtor may seek one or more orders of the Bankruptcy Court seeking an order authorizing the abandonment and destruction of its books and records at such time as the recordkeeping time periods required by applicable law have expired.

13.9 **Saturday Sunday and Legal Holiday**. If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

13.10 **Plan Interpretation.** The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular shall be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders. References to the Debtors shall also include the Liquidating Debtor (or vice versa) as the context requires. All exhibits attached to

DAK/JLF
K:\...\Plan\Plan\3v12.doc

DEBTORS' JOINT PLAN OF LIQUIDATION

the Plan are, by this reference, hereby incorporated into the Plan. All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

13.11 **Modification**. The Debtors may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan. After the Confirmation Date, the Debtors may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

13.12 **Setoff/Recoupment.** Nothing contained in this Plan shall constitute a waiver or release by the Debtors or Liquidating Debtor of any right of setoff or recoupment the Debtors may have against any Creditor.

13.13 **Waiver**. After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

13.14 **Notices**. All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by first class mail, as follows:

**If to the Liquidating Debtor:**

> ComUnity Lending Group
> Attn: Richard G. Couch
> 1452 N. Vasco Road, Suite 300
> Livermore, CA 94551

**With a copy to:**

> Doris A. Kaelin
> Murray & Murray
> A Professional Corporation
> 19400 Stevens Creek Boulevard, Suite 200
> Cupertino, CA 95014

and if to a holder of an Allowed Claim or Allowed Interest, at the address prescribed by Section 8.2. Notices shall be deemed given when delivered or three days after deposit in the United States mail. Any entity may change the address at which such entity is to receive notices under the Plan by

1  sending written notice to the then current list of Notice Parties.

2      13.15 **Reservation of Rights.**  Neither the filing of the Plan nor any statement or provision

3  contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any

4  action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest; and (b)

5  until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have:

6  (i) against any other party in interest; or (ii) in any of the assets of any other party in interest, and,

7  until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not

8  confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any

9  statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any

10  manner in any suit, action, proceeding or controversy within or without this Bankruptcy Case

11  involving the Debtors, except with respect to Confirmation of the Plan.

12  DATED: July 7, 2008                    COMUNITY LENDING INCORPORATED
                                           A CALIFORNIA CORPORATION
13

14                                         BY:  _/s/ RICHARD G. COUCH_____
                                                CHIEF EXECUTIVE OFFICER AND
15                                              RESPONSIBLE PERSON

16  DATED: July 7, 2008                    LES LIQUIDATION INC.
                                           A CALIFORNIA CORPORATION
17

18                                         BY:  _/s/ RICHARD G. COUCH_____
                                                CHIEF EXECUTIVE OFFICER AND
19                                              RESPONSIBLE PERSON

20

21  **MURRAY & MURRAY**
    A PROFESSIONAL CORPORATION
22

23  BY:  _/s/ DORIS A. KAELIN_____
          DORIS A. KAELIN
24        ATTORNEYS FOR DEBTORS

25

26

27

28

DAK/JLF                                          29       DEBTORS' JOINT PLAN OF LIQUIDATION
X:\Comunity Lending\Pld\Plan v1.doc

Case: 08-50030    Doc #: 160    Filed: 07/07/08    Entered: 07/07/08 18:08:20    Page 36 of
                                                42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

*DBA's of the Debtor: 1st Advantage Mortgage; 1st Premier Mortgage; 1st USA Mortgage and Investment; A Better Choice Mortgage; Accepted Mortgage Group; Access Mortgage LLC; Accredited First Financial Mortgage; Accurate Lending; Ace Mortgage; Achill Mortgage; Advantage Funding Group; Aladdin Mortgage; All Valley Mortgage of Clovis; Allied Mortgage; Alpha Mortgage Funding; American Fidelity Mortgage; American Mortgage and Financial Services; American Mortgage Resources; Amoskeag Mortgage; Atlantic Coast Financial Group; Atlantic Liberty Lending; Austinloan.com; Avalon Financial Group; Award Funding; Bay Area Lending; Best Rate Lending; Black Mountain Mortgage; Borrowers Best Mortgage Company; Borrowers Best Mortgage MAC; Borrowers Best Mortgage MAC 2; Buyers Advantage Home Lending; California Mortgage Alliance; Capital Lending House; Capitol Mortgage; Central Coast Mortgage; Citinet Lending; City Wide Mortgage; CityLine Financial; CJ Mortgage; Clear Sky Lending; Colorado Community Lending; Community Lending Group; Community Lending of Greater Chattanooga; Community Lending of Las Vegas; Community Mortgage America; Community Mortgage Lending; Community Mortgage Planners; ComUnity Lending; Consultants West; Consumers Choice Mortgage; Coppertree Lending; Cornerstone Capital; Coronado Mortgage; Creative Mortgage Solutions; CreditFlex Funding; Cross Mortgage; Crystal Clear Mortgage; Definitive Financial; Desert Sound Financial Group; Direct Funder; Direct Home Lending; Dream Mortgage; Everquest Mortgage; F3 Lending Group; Fidelity Mutual Financial; Financialgroup Mortgage; First Assurance Mortgage; First Choice Financial Group; First Choice Funding; First Option Mortgage; First Rate Mortgage; Franklin Mortgage Group; G.I. Home Loans; Gemini Mortgage; Genesis Lending Group; Gold Star Mortgage; Good Life Financial; Heartland Mortgage Group; Hemet Mortgage; High Q Mortgage Solutions; Home Financial; Home Lending Team; Home Loan Café; Home Loan Online; HomeFindersCenter.com; Homefront Financial; House Mart; Ida's Direct Mortgage; Illinois Community Lending; Imani Mortgage; Infinity Capital Lending; InstaLoan Approval; J & L Lending; J&H Associates Mortgage Group; Jay Royal Mortgage Lending; JEI Mortgage Services; JMAC Lending; JMC Financial; Keystone Lending; Land America Mortgage; Latte Stone Mortgage; Lender for Life Mortgage; LFC Lending; Lighthouse Mortgage; Lion Funding Group; Loan Services; LoanAxis.net; LoanSmart Lending; Louisiana Community Lending; Maxxim Mortgage; Metro Home Loans; MGM Financial; Midwest Equity Financial Services; Midwest Lending Source; Millenium First Funding; Missouri Home Lenders; Mortgage Service of Tallahassee; Mortgage Funding Servicing; Mortgage Initiative; Mortgage Lending Solutions; Mortgage Lending Source; Mortgage MD; Mortgage Only; Mortgage Partners; Mortgage Providers; MortgageTown Direct; Mountain Point Mortgage; MTS Home Loans; National Mortgage; New England Alliance Mortgage; Noble Lending Group; Northeast Community Lending; Number 1 Mortgage; Ohio Community Lending; Olde Country Fair Mortgage; Omega Mortgage Group; On The Move Mortgage Services; Pacific Capital Mortgage; Pacific Lending Group; Paradigm Home Lending; Paradigm Home Mortgage; Paradise Financial Mortgage; Paramount Home Lending Network; Patriot Home Loans; Pennica Lending Group; Phoenix Capital Group; Pine Star Mortgage; Preferred Funding; Premier Capital Mortgage; Premier Direct Lending; Premier Lending Group; Premiere Lending Co; Prestige Funding Group; Prime Rate Mortgage; Primestar Lending; Priority One Lending; Provident Lending; Quality Mortgage Services; Residential Funding; Rockview Lending Group; SA Taft; San Jose Wholesale; Satisfaction Mortgage; Security National Lending; Select Mortgage Services; Signature Lending; Skyline Funding; Source Funding Group; Southern Community Mortgage; Southwest Capital Funding; Special Forces Mortgage; Speedy Lending Group; SRA Mortgage; Summit Community Lending; Superior Mortgage; Texas Residential Lending; Texline Mortgage; The Loan Arrangers; The Mortgage Center of Tucson; The Mortgage Channel; The Principle Lending; Three Rivers Mortgage; Titan Financial Group; TL Mortgage; Tri State Community Lending; UEX Financial; Union Lending; Unity Lending; Universal Financial Group; Universal Lending; Universal Lending of Elk Grove; Universal Valley Mortgage; Unlimited Mortgage Service; Urbana Mortgage; Valley Mortgage; Valley Wide Home Loans; Victoria Mortgage; Victory Lending; Virginia Community Lending; Wardley Mortgage; West Avenue Mortgage; West Coast  Community Lending; Windsor Lending; Your Lowest Mortgage; Zenith Financial Services.

# Exhibit "A"

### ComUnity Lending, Incorporated
### a California Corporation, et al.

*Chapter 11 Bankruptcy Case No.: 08-50030-MM*

**To**

DEBTOR'S JOINT PLAN OF LIQUIDATION (DATED JULY 7, 2008)

## Exhibit A

### *ComUnity Lending, Incorporated (Case No 08-50030) and*
### *LES Liquidation, Incorporated (Case No 08-50031)*

**EXECUTORY CONTRACTS & UNEXPIRED LEASES TO BE ASSUMED**

|    | **Contract Party** | **Contract Description** |
|----|--------------------|--------------------------|
| 1. | Barbara Wong | Independent Contractor Agreement |
| 2. | Allen Christianson | Independent Contractor Agreement |
| 3. | Brandon Truong | Independent Contractor Agreement |
| 4. | Brian Esperson | Independent Contractor Agreement |
| 5. | Buchalter Nemer | Legal Services Agreement |
| 6. | Cowan Alexander | Auctioneer Agreement |
| 7. | Gwenn Tyler | Independent Contractor Agreement |
| 8. | Janene Towner | Independent Contractor Agreement |
| 9. | Jody White | Real Estate Broker Agreement |
| 10. | Karen Armstrong | Real Property Broker Agreement |
| 11. | Mike Schrull | Real Property Broker Agreement |
| 12. | Rebekah Carter | Independent Contractor Agreement |
| 13. | Rosario Chito Schnupp | Independent Contractor Agreement |
| 14. | Ross Diversified<br><br>Safeco Insurance | Real Property Insurance RE 1080 Melson Avenue<br><br>Real Property Insurance RE 503 Michigan Ave, Howell, MI<br><br>Real Property Insurance RE 1835 Mary Lou Lane, Atlanta, GA<br><br>Real Property Insurance RE 1325 W. 6th Street, Lorain, OH |
| 15. | Rothstein Kass & Co LP | Service Agreement |
| 16. | Small Business Server | Software Agreement |
| 17. | Suzanne Martindale | Independent Contractor Agreement |
| 18. | Tammy Miller | Real Estate Broker Agreement RE 503 S. Michigan Avenue, Howell, MI |
| 19. | Debbie Boyes | Independent Contractor Agreement |



Exhibit "B"

**ComUnity Lending, Incorporated**
**a California Corporation, et al.**

*Chapter 11 Bankruptcy Case No.: 08-50030-MM*

To

DEBTOR'S JOINT PLAN OF LIQUIDATION (DATED JULY 7, 2008)

**Exhibit B**

**_ComUnity Lending, Incorporated (Case No 08-50030) and_**
**_LES Liquidation, Incorporated (Case No 08-50031)_**

**EXECUTORY CONTRACTS & UNEXPIRED LEASES TO BE REJECTED\***

|     | **Contract Party** | **Contract Description** |
| --- | --- | --- |
| 1. | Tina Merritt | Real Estate Broker Agreement |
| 2 | Verizon MCI | Internet Service Provider Service Agreement |
| 3. | Opitmum Source, Inc., | Outsourcing Agreement |
| 4. | Terminal Server License | Software License |
| 5. | Therese Haborlo | Real Estate Broker Agreement |
| 6. | Advanced Mailing Systems | Postage Meter Agreement |
| 7. | Alena Anderson | Independent Contractor Agreement |
| 8. | Ross Diversified<br><br>SafeCo Insurance | Real Property Insurance re: 6621 Oakman Blvd Dearborn, MI; 45 Amber Drive, Campbellsville, KY; 660 Kenneth Road, Virginia Beach, VA; 281 Milton Road, Rochester, NH; 616 College Hts, Desoto, MO; 1443 Arnold Ave, Prot Orchard, WA; 7540 Forror, Detroit, MI; 2941 N. Van Ness Blvd, Fresno, CA; 3287 Klemme Road, Gerald, MO; |
| 9. | AT&T | Internet Service Agreement |
| 10. | Avaya, Inc., | Service Agreement |
| 11. | Lenore M. Relos-Chong | Independent Contractor Agreement |
| 12. | Lydia Mejia | Independent Contractor Agreement |
| 13. | Carlos Genest | Insurance Broker Agreement |
| 14. | Carol Pope | All Real Property Broker Agreements including Gerald MO and Desoto MO Agreements |
| 15. | MCI | Service Agreement |
| 16. | Time Warner Cable | Internet Service Agreement |
| 17. | Verizon MCI | Internet Service Provider Agreement |
| 18. | Virpack | Professional Service Agreement and Scanning Software |
| 19. | Kaiser Permanente | Medical Insurance |
| 20. | Cisco | Server Maintenance |
| 21. | Citrix | Software Licenses and Terminal Server Agreement |
| 22. | Tamera Mankini | Real Estate Broker Agreement |
| 23. | Thai n. Nguyen | Independent Contractor Agreement |

Case: 08-50030   Doc# 160   Filed: 07/07/08   Entered: 07/07/08 18:08:20   Page
42

EXHIBIT B

| 24. | De Lage Landen Financial Services | Software License |
|-----|-----------------------------------|------------------|
| 25. | Paychex | Payroll Service Agreement |
| 26. | Sharisee Duncan | Real Estate Broker Agreement |
| 27. | Sherry Webb | Real Estate Broker Agreement |
| 28. | State Compensation Insurance Fund | Workers Compensation Insurance Agreement and All Agreements |
| 29. | First American Flood Data Service | Service Agreement |
| 30. | First American Real Estate Tax Services | Tax Service Agreement |
| 31. | iComply | Software License |
| 32. | Keith Brown | Real Property Broker Agreement |
| 33. | MGIC Investor Services Agreement | Software Agreement |
| 34. | MicroSoft | Business Software; Enterprise Agreement; Terminal Server Agreement |
| 35. | Hasler Financial Services LLC | Meter Agreement |
| 36. | Microsoft (Antigen) | Software License re Antigen Antivirus Software |
| 37. | Mortgage Asset Research Institute | Data Exchange Server |

*Most executory contracts and unexpired leases have already been addressed in the Bankruptcy Case pursuant to the Debtors' rejection of certain contracts and leases pursuant to Court order. In order to account for all other contracts and leases that existed on the Petition Date, this Exhibit includes contracts and leases to which the Debtors were parties as of the Petition Date, including those contracts and leases that expired or terminated by their own terms during the pendency of the Case and may include certain contracts and leases previously rejected pursuant to Court order. If a contract on this list is not executory or has already been rejected, the fact of its inclusion on this list does not create a right by any party to such contract to file a Rejection Claim or extend the Claims Bar Date or previously agreed/ordered claims bar date for such party to the Rejection Claims Bar Date.

Case: 08-50030   Doc# 160   Filed: 07/07/08   Entered: 07/07/08 18:08:20   Page 42 of 42