**Entered on Docket
February 16, 2010**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed February 16, 2010

*Marilyn Morgan*
**Marilyn Morgan
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>ComUnity Lending, Incorporated, a California Corporation,<br><br>　　　　Debtor. | Case No. 08-50030 MM<br><br>Chapter 7<br><br>**MEMORANDUM DECISION AND ORDER ON MOTIONS TO DETERMINE ADMINISTRATIVE PRIORITY OF ATTORNEYS' FEES CLAIM** |

### INTRODUCTION

Former employees of ComUnity Lending Incorporated, who participated in the company's deferred compensation plan, assert that CLI unlawfully withheld distributions that became due upon termination of the plan. During CLI's bankruptcy, a federal district court entered summary judgment in favor of the plan participants and subsequently awarded them $448,934.75 in attorneys' fees as the prevailing parties. The chapter 7 trustee of debtor's estate has appealed from the judgment. The plan participants now ask this court to determine that the fees awarded should be paid as an administrative expense of CLI's estate. The trustee urges that the award does not qualify as an administrative expense, regardless of the outcome on appeal.

## FACTUAL BACKGROUND

In 2001, CLI, a corporation engaged in the real estate mortgage and lending business, established a Non-Qualified Deferred Compensation Plan for a select group of its employees pursuant to the provisions of the Employee Retirement Income Security Act of 1974. Under the Plan, CLI's employee-participants could defer income and taxes by contributing a portion of their salaries to the Plan. Claimants Mai Christina Pham, John Pham, Mai Nguyen, Hung Perry Nguyen, Joyce Freeman and Christopher Hake (collectively the "Pham claimants") are former CLI employees who participated in the Plan. Katherine Buckmeyer, Jack Ferguson, John Nelson, Jeannine Rupert and Phyllis Christich (collectively the "Buckmeyer claimants") are also former Plan participants but have retained separate counsel.

A Plan Agreement drafted by CLI sets out the terms of the Plan. Contributions were held in trust and were administered by an institutional trustee pursuant to a separate trust agreement. The terms of the Plan provided that the employee contributions and any income derived therefrom would remain property of CLI. Although the value of a participant's account was fully vested, it remained expressly subject to the reach of CLI's creditors in the event of insolvency. The Plan also stated that CLI could terminate the Plan at any time. Upon termination, the deferred compensation would be reinstated as taxable salary, the participants would be 100% vested and a lump sum cash payment would become immediately payable to each participant. The Plan further provided that the vested account balance of a participant was to be paid from the trust only to the extent that CLI, at time of payment, was not insolvent.

In August 2007, CLI's Board of Directors voted to terminate the Plan. On September 4, 2007, CLI sent a notice to all participants advising them that the Plan was terminated effective that same day. Following that announcement, the Pham and Buckmeyer claimants submitted distribution requests to the Plan's trustee. The Plan trustee distributed the requested funds to CLI. After receiving the funds, CLI refused to distribute them to the claimants, contending that CLI had become insolvent.

On October 24, 2007, the Pham claimants sued CLI in federal district court alleging, in part, that CLI had unlawfully withheld benefits owed to them in breach of the Plan Agreement. The complaint sought declaratory and injunctive relief, as well as damages. The Pham Claimants sought a writ of

attachment against the funds in CLI's possession. In early December 2007, the district court granted the writ and directed CLI to hold the disputed funds in a segregated account.

On January 4, 2008, CLI filed for relief under chapter 11 of the Bankruptcy Code. Within days, the Pham claimants filed an adversary proceeding raising virtually identical claims to those alleged in the original district court litigation. CLI answered and filed a counterclaim seeking declaratory relief against the Buckmeyer claimants, thereby bringing all plan participants, who were not part of the Pham claimant group, into the litigation. The counterclaim raised no cause of action beyond those raised in the original complaint.

In June 2008, the district court withdrew reference of the adversary proceeding from this court and assumed jurisdiction over it in addition to the original district court action. Over the next five months, the parties briefed and argued cross-motions for summary judgment and the district court took the motions under submission in late October 2008.

Meanwhile, in November 2008, this court granted CLI's request to convert its bankruptcy to a case under chapter 7 of the Bankruptcy Code. A chapter 7 trustee was appointed and assumed responsibility for the defense of the litigation pending in the district court. On December 11, 2008, the district court issued its decision granting summary judgment in favor of the Pham and Buckmeyer claimants. The court found that the benefits due under the Plan were not property of the estate and were not subject to the claims of CLI's general creditors. Subsequently, it entered one judgment that concluded both the original district court action and the adversary proceeding.

On February 13, 2009, the Pham and Buckmeyer claimants filed motions to recover their attorneys' fees, contending that ERISA § 502(g), 29 U.S.C. § 1132(g), authorizes an award of reasonable attorneys fees and costs to prevailing parties. They further requested a determination that any fees awarded were entitled to administrative expense priority in these proceedings. The chapter 7 trustee opposed the motion. The district court granted the request for fees, respectively awarding the Pham and Buckmeyer claimants $358,934.75 and $90,000.00. The court declined, however, to consider whether or not the fees should be paid as an administrative expense of CLI's estate, finding that the issue of priority is a core proceeding to be determined by this court.

3

**MEMORANDUM DECISION AND ORDER THEREON**
Case: 08-50030   Doc# 369   Filed: 02/16/10   Entered: 02/16/10 17:09:28   Page 3 of 10

In June 2009, the trustee appealed from the district court's grant of summary judgment in favor of the Pham and Buckmeyer claimants and from the subsequent fee order to the extent that the underlying judgment might be overturned. That appeal remains pending. In July, the trustee's professionals filed interim applications for compensation with this court. Without filing written opposition, the Pham and Buckmeyer claimants appeared and voiced objections at the hearing on the fee applications. They did not dispute the reasonableness of fees requested; rather, they objected to any payment of the fees before the priority of their prevailing party fee award could be determined. At the conclusion of the hearing, the court approved the applications only as to the amount of the requested fees and set a briefing schedule on all issues related to payment of the approved fees.

In their written submissions, the claimants challenged this court's jurisdiction to consider the priority of the fee award pending appeal of the underlying district court judgment. Further, they extensively addressed whether the district court's award of prevailing party attorneys' fees was entitled to administrative priority. On October 9, 2009, this court concluded that the appeal of the district court judgment did not divest this court of jurisdiction to determine the priority of the attorneys' fees awarded by the district court. Although the parties had already briefed whether the district court's fee award constituted an administrative expense of the estate, at the request of the Pham and Buckmeyer claimants, the court allowed additional briefing on that issue. In light of the supplemental submissions, the court finds that further briefing and oral argument is unnecessary and concludes that the district court's award of fees is not an administrative expense of the estate.

**LEGAL DISCUSSION**

Claims for "actual, necessary costs and expenses of preserving" an estate are administrative expenses under § 503(b)(1) of the Bankruptcy Code and are entitled, under § 507, to be paid before other general unsecured claims. Because of bankruptcy's general presumption in favor of ratable distribution, entitlement to administrative expense status is construed narrowly to keep administrative costs to a minimum. *In re Hemingway*, 954 F.2d 1, 5 (1st Cir. 1992). Only post-petition debt qualifies. *Kadejevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016, 1019 (9th Cir. 2000)(collecting cases). In light of these standards, a claimant requesting administrative expense status must prove that the claim

4

or debt: 1) arose from a post-petition transaction with the trustee or debtor in possession, and 2) directly and substantially benefitted the estate. *Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.)*, 319 F.3d 1166, 1172 (9th Cir. 2003); *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755, 757 (9th Cir. 1988). Because the claimants here cannot satisfy this burden, the fees awarded to them do not qualify as administrative expenses.

**I.      The Attorneys' Fees Awarded To The Claimants Arise From a Pre-Petition Transaction.**

In classifying post-petition awards of attorneys' fees, like the award here, the Ninth Circuit has held that fees, even those awarded post-petition, will not qualify as an administrative expense if the source of the obligation to pay the award arose pre-petition. *Kadejevich*, 220 F.3d at 1020; *Abercrombie*, 139 F.3d at 758. In *Abercrombie*, the Ninth Circuit denied administrative priority to attorneys' fees awarded pursuant to a pre-petition contractual provision. The fees at issue were incurred post-petition as part of a successful effort to reverse a lower court judgment that the debtor in possession had defended. Although the claimant asserted that the fee award arose from debtor's post-petition conduct in defending the appeal, the court looked beyond that conduct and determined that the source of the obligation to pay the fees was the parties' pre-petition contract. In finding that the fee award arose from a pre-petition transaction, the circuit court specifically rejected an earlier appellate panel decision that had reached a contrary conclusion where a debtor in possession continued post-petition litigation of a pre-petition breach of contract claim. *Abercrombie*, 139 F.3d at 758-59, *criticizing*, *In re Madden*, 185 B.R. 815 (9th Cir. B.A.P. 1995).

In *Kadjevich*, the Ninth Circuit extended its "source of the obligation" analysis beyond the context of pre-petition contracts to find that a post-petition fee award pursuant to a California fee-shifting statute still arose from a pre-petition transaction. In that case, Nicholas Kadjevich sued his brother, Robert, for fraud. Then, Robert filed a chapter 11 bankruptcy petition. Post-petition, the brothers agreed to settle the fraud action, but Robert breached the settlement agreement. Nicholas proceeded to judgment against his brother and obtained a ruling that Robert's bad faith conduct in refusing to honor the settlement agreement entitled Nicholas to an award of attorneys' fees. Nicholas sought payment of the post-petition fee award as an administrative expense of Robert's estate. Relying

5

**MEMORANDUM DECISION AND ORDER THEREON**
Case: 08-50030    Doc# 369    Filed: 02/16/10    Entered: 02/16/10 17:09:28    Page 5 of 10

on *Abercrombie*, the Ninth Circuit rejected Nicholas' request. Although Nicholas' right to request fees, *i.e.*, Robert's bad faith conduct, accrued post-petition, the court reasoned that the source of the obligation to pay the fees arose pre-petition when the state court fraud action exposed Robert to liability for fraud and to a claim for fees under the fee-shifting statute. *Kadejevich*, 220 F.3d at 1020.

The Pham and Buckmeyer claimants urge that the attorneys' fee award here arose out of a post-petition transaction because several key events took place after CLI filed its bankruptcy petition: 1) the filing of the adversary proceeding, 2) the chapter 7 trustee's defense of the litigation, and 3) the entry of the district court order awarding them fees. Under prevailing Ninth Circuit authority, however, none of these events transforms their attorneys' fee claim into a post-petition debt. Through the decisions in *Abercrombie* and *Kadjevich*, the Ninth Circuit has made a clear distinction between the source of the debtor's obligation to pay a debt and the accrual of the right to pursue recovery of the debt. As long as the first of these two events is pre-petition, the debt will not be entitled to administrative priority. Under the rule in *Kadjevich*, the source of CLI's obligation to pay the attorneys' fee award, at the latest, arose pre-petition when the claim based on CLI's failure to distribute benefits exposed CLI to liability for attorneys' fees under ERISA § 502(g).

That the adversary proceeding and CLI's counterclaim against the Buckmeyer claimants were filed after CLI filed for bankruptcy does not change that conclusion. The Pham claimants' original district court action against CLI and the adversary proceeding are virtually the same, each alleges that CLI unlawfully failed to distribute benefits due under the plan and each seeks identical relief. Indeed, the district court withdrew the reference of the adversary proceeding and, ultimately, entered one judgment closing both cases. Additionally, the timing of CLI's counterclaim does not provide a persuasive basis for treating the Buckmeyer claimants' fee award differently. The counterclaim, which sought declaratory relief, merely served to put the Buckmeyer claimants on notice of the Pham claimants' lawsuit and to ensure that any determination on the merits would be binding between CLI and all of the plan participants. Finally, regardless of when litigation was filed, the event that first exposed CLI to liability occurred pre-petition when CLI did not distribute benefits upon termination of the Plan.

The post-petition timing of the district court order awarding fees to the claimants also does not alter the pre-petition nature of CLI's obligation to pay the award. Citing *Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 242 B.R. 130 (Bankr. S.D.N.Y. 1999), claimants urge that the post-petition award of fees pursuant to a federal fee-shifting statute makes this case different from *Abercrombie* and *Kadjevich*. In *Jamesway*, an employer violated the WARN Act, a federal statute that requires advance notice of employee terminations. A group of former employees filed suit to recover back pay. After the employer filed for bankruptcy, it continued to defend, and lost, the litigation. The bankruptcy court there ruled that a post-petition fee award pursuant to the WARN Act's fee-shifting provisions arose from a post-petition transaction because, unlike the pre-petition contractual obligation to pay fees in *Abercrombie*, the plaintiffs were not entitled to any fees until they prevailed in the underlying action. Significantly, *Jamesway* was decided between the Ninth Circuit decisions in *Abercrombie* and *Kadjevich*. The *Jamesway* court relied heavily on *In re Execuair Corp.*, 125 B. R. 600 (Bankr. C.D. Cal. 1991), where a California bankruptcy court had concluded that a post-petition award of fees under a Lanham Act fee-shifting provision was entitled to administrative priority. Once the Ninth Circuit had occasion to consider a post-petition award pursuant to a fee-shifting statute, however, it expressly disapproved of *Execuair*'s analysis and concluded that there is no principled way to distinguish between a pre-petition contract that provides for fees and a pre-petition tort claim that later results in fees. *Kadjevich*, 220 F. 3d at 1020-21 and n.4. Although *Kadjevich* directly involved a pre-petition tort claim, the court's disapproval of *Execuair* makes it clear that a claim based on a pre-petition statutory violation that later results in fees should be treated consistently.

The claimants further contend that the baseless nature of the trustee's post-petition defense of the district court litigation distinguishes this case from *Abercrombie* or *Kadjevich*. In *Kadjevich*, the Ninth Circuit cited two lower court cases involving frivolous litigation by a trustee or debtor in possession and left open the possibility that a post-petition fee award might be entitled to administrative priority if a trustee were to commence post-petition litigation on behalf of the estate or to seek relief from the automatic stay to continue the prosecution of pre-petition litigation. *Kadjevich.* 220 F.3d at 1021, *citing*, *In re Met-L-Wood Corp.*, 115 B.R. 133 (N.D. Ill. 1990)(bankruptcy trustee wrongfully pursued meritless litigation); *In re E.A. Nord Company, Inc.*, 78 B.R. 289 (Bankr. W.D. Wash.

7

1987)(debtor in possession violated duties owed to creditors by engaging in frivolous post-petition litigation). In *Met-L-Wood* and *E.A. Nord*, the courts recognized that the post-petition litigation was a separate and distinct violation of a duty to avoid frivolous lawsuits. Because the related post-petition attorneys' fees arose out of that separate post-petition breach, they were entitled to administrative priority. Here, however, there has been no finding that the defense of the adversary proceeding was frivolous or meritless. To the contrary, the district court in ruling on the cross-motions for summary judgment used rules of contract construction to reconcile conflicting terms in the Plan. At a subsequent hearing, the court recognized that the Plan contained language that "supported the position of ComUnity Lending and supported [claimants'] position," and expressly noted that there is "a legitimate legal issue there . . . is subject to review." In light of those comments, it cannot be said that the estate's defense of the adversary proceeding, either before the district court or on appeal, has violated any post-petition duty to avoid frivolous litigation. Once again, claimants' related attorneys' fees do not arise from a post-petition transaction.

## II. The *Reading* Exception Provides No Basis For Bestowing Administrative Priority on Claimants' Fee Award.

In *Reading Co. v. Brown*, 391 U.S. 471, 88 S. Ct. 1759 (1968), the United States Supreme Court recognized a limited exception to the requirement that an administrative claimant show that the expense directly and substantially benefitted the estate. In that case, tort claimants sustained damages in a post-petition fire caused by a receiver's negligence. As a result, the parties agreed that the damages arose from a post-petition transaction and the Court addressed the second element of proof: whether the claimed damages constituted a cost of preserving the estate. Although the damage claim did not "benefit" or "preserve" the estate, the Court looked to equitable principles of "fairness to all persons having claims against the insolvent" and concluded that where a trustee operates a business for the benefit of the creditors, but ends up injuring others, the innocent third parties are entitled to recover their damages ahead of those for whose benefit the business was being operated. *Id.* at 482-83, 88 S. Ct. at 1765. In other words, the Court found that principles of fundamental fairness dictate that the injuries

8

**MEMORANDUM DECISION AND ORDER THEREON**

caused by a trustee's post-petition wrongful conduct should be deemed an actual and necessary cost of "preserving" the estate despite the absence of any actual benefit to the estate.

If the fees awarded to the Pham and Buckmeyer claimants had arisen out of a post-petition transaction, the award may well have qualified as an administrative expense under the equitable standards enunciated in *Reading*. It is apparent, however, that the *Reading* exception only provides relief from the requirement that a claimant requesting administrative expense status show a direct and substantial benefit to the estate. The exception does not transform a pre-petition expense into a post-petition expense. As the Ninth Circuit emphasized in a discussion of *Reading*, "Critically, however, only *post-petition* debts can be treated as administrative expenses; *pre-petition* debts may not." *Kadjevich*, 220 F.3d at 1019 (emphasis in original).

While the court recognizes that ERISA is a remedial statute that should be liberally construed in favor of protecting participants in employee benefit plans and that claimants have expended significant sums of money in their effort to collect their retirement savings, the fact remains that claimants' losses ultimately arise from a pre-petition event. As a result, their request for priority payment of their attorneys' fees must be denied.

## CONCLUSION

For the reasons explained, the motions to determine the administrative priority of attorneys' fee claims are denied. The attorneys' fee awards to both the Pham claimants and the Buckmeyer claimants shall be treated as general unsecured claims. In light of this conclusion, there is no reason to further delay payment of the chapter 7 professional fees that were previously approved by this court. Payment of the approved fees is hereby authorized.

Good cause appearing, IT IS SO ORDERED.

\* \* \* \* END OF ORDER \* \* \* \*

9

Case No. 08-50030

**COURT SERVICE LIST**

Ronald S. Kravitz
Matthew Borden
LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF & TAYLOR LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255

Jesse L. B. Hill
LAW OFFICES OF JESSE L. B. HILL
1042 Palm Street, 2nd Floor
San Luis Obispo, CA 97620

Barry Milgrom
Nhung Le
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
121 Spear Street, Suite 200
San Francisco, CA 94105-1582

John Walshe Murray
Robert A. Franklin
Doris A. Kaelin
MURRAY & MURRAY
19400 Steven Creek Blvd., Suite 200
Cupertino, CA 95014-2548

10

**MEMORANDUM DECISION AND ORDER THEREON**
Case: 08-50030    Doc# 369    Filed: 02/16/10    Entered: 02/16/10 17:09:28    Page 10 of 10